**Gonzalo MITRE and Monica Aguirre Canseco, Appellants,**

v.

**BROOKS FASHION STORES, INC., et al., Appellees.**

**No. 13–91–370–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1992.

Rehearing Overruled Nov. 6, 1992.

M. Lloyd Seljos, McAllen, for appellants.

Jaime A. Drabek, Hirsch, Glover, Robinson & Sheiness, Kathleen H. Henley, Willette & Associates, John William Black, Black, Hamilton, Roerig & Yanez, Brownsville, Kathleen Walsh Beirne, Kruse, Laser & Griffin, Houston, Stephen C. Haynes, Anthony B. James, Thornton, Summers, Biechlin, Dunham & Brown, McAllen, Patricia Kelly, Roger W. Hughes, Adams & Graham, Harlingen, Edward G. Aparicio, Michael E. Hearn, Jones, Galligan, Key & Pena, Weslaco, Alan J. Couture, Brin & Brin, P.C., Corpus Christi, for appellees.

Before SEERDEN, KENNEDY and GILBERTO HINOJOSA, JJ.

## OPINION

SEERDEN, Justice.

Gonzalo Mitre and Monica Canseco appeal from a take-nothing summary judgment granted against them on their claims for defamation, intentional infliction of emotional distress, invasion of privacy, negligence and gross negligence against individual stores in a shopping mall in McAllen, Texas,[1] which allegedly displayed pictures of Mitre and Canseco falsely accusing them of passing counterfeit money. We reverse in part, and affirm in part.

By their First Amended Original Petition, Mitre and Canseco sued both La Plaza

1. Oak Tree Men's Store; Joan Bari; 5–7–9 Shops; Jeans West, Inc.; Casey & Osh, Inc. d/b/a Attivo; Lerner Shops, Inc.; Cutlery World of America; Brooks Fashion Stores, Inc.; Joe Brand of McAllen, Inc.; and Spencer Gifts, Inc.

Mall [2] and the individual stores for libel and slander (i.e., defamation), intentional infliction of emotional distress, invasion of privacy, negligence, gross negligence, and a violation of the Texas Deceptive Trade Practices Act. The petition alleged that Mitre, Canseco and Olga Verduzco went shopping together in the La Plaza Mall in McAllen, Texas. While apart from the other two and shopping at Brooks Fashion Stores, Verduzco attempted to pay for clothing with hundred dollar bills which the store clerk believed to be counterfeit. A mall security officer detained Verduzco while a McAllen Police Officer confirmed with a local financial institution that the bills were not counterfeit. However, before finding out that the bills were not counterfeit, the mall security officer obtained photographs from Verduzco of Mitre and Canseco, under the guise of helping her to find the other two. Mall security made copies of the photographs and distributed them to the shops in the mall, telling them that the people in the photographs, Mitre and Canseco, were passing counterfeit bills in the mall. These shops then prominently displayed the photographs and told anyone that inquired that the people in the photographs had been passing counterfeit bills in the mall. Numerous people that knew Mitre and Canseco saw the photographs and heard that they were being accused of passing counterfeit bills.

The shops answered by general denial and, among other things, asserted the affirmative defense of a conditional or qualified privilege to communicate the allegedly defamatory matters, and that they acted in good faith, with proper motive, and without malice. In addition, the shops all filed substantially similar motions for summary judgment on all causes of action asserted by Mitre and Canseco.[3] All parties then filed summary judgment evidence in the form of affidavits and deposition excerpts.[4] The trial court granted summary judgment for the individual mall shop defendants, and severed the claims against them into a separate cause of action from the claims against La Plaza Mall.

■■■ On appeal, Mitre and Canseco complain generally that the trial court erred in granting summary judgment because material issues of fact remain on all of their causes of action. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding a summary judgment, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in the non-movant's favor, and any doubts must be resolved in his favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant who moves for summary judgment has the burden of showing by summary judgment evidence that at least one element of the plaintiff's cause of action has been conclusively established against the plaintiff. *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105 (Tex.1984); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970).

■■■ In addition, a motion for summary judgment must specifically set forth the grounds relied upon, on the basis of which

---

**2.** Including La Plaza Mall; Melvin Simon & Associates, Inc.; M.S. Management Associates, Inc.; and McAllen Mall Company Limited Partnership.

**3.** Since Mitre and Canseco have not sought to distinguish the various summary judgment motions filed by the individual mall store defendants, but address them as if the entire group filed the same summary judgment motion, we also assume that each store's motion raises identical grounds for summary judgment.

**4.** Concerning the summary judgment evidence, appellee Brooks has filed with its brief a motion to strike volume three of the transcript because it asserts that the full depositions therein, of Mitre and Canseco, were not properly before the trial court. However, we have reviewed the depositions in question and find that all matters that would affect the outcome of the present appeal are also in the deposition excerpts that were properly authenticated and brought before the trial court as summary judgment evidence. Thus, we need not determine whether or not the full depositions were properly before the trial court on summary judgment. Appellee Brooks' motion to strike is overruled.

it will either stand or fall, and a summary judgment may not be granted on grounds which were not raised in the motion. *See Wilson v. H.E. Butt Grocery Co.,* 758 S.W.2d 904, 906 (Tex.App.—Corpus Christi 1988, no writ); *Life Insurance Co. of North America v. Klingler,* 730 S.W.2d 32, 35 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.); *Ortiz v. Spann,* 671 S.W.2d 909, 914 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.) (on rehearing).

## DEFAMATION

By their first through fifth points of error, Mitre and Canseco complain that the trial court erred in granting the summary judgment on their defamation actions. The mall shops raised as grounds for summary judgment on the defamation claims that the uncontradicted summary judgment evidence established that there was no publication of the defamatory material to any customer or third person, and that the shops had a qualified or conditional privilege with regard to materials given to them by mall security for the purpose of protecting their businesses. In addition, the shops raised as a ground for summary judgment generally on all claims that the summary judgment evidence conclusively showed that Mitre and Canseco suffered no compensable damages.

The managers for each of the ten shops submitted affidavits generally claiming that a La Plaza Mall security guard had given each a copy of the flyer containing the photographs of Mitre and Canseco. Some of the shops taped the flyer to or near the cash register for their employees to see, others taped it behind the counter, placed it on a clipboard located on a shelf near the cash register, or put it in a file. Half of the shops indicated that the flyer was placed where it was not visible to customers. Most of the managers also claimed that neither they nor their employees discussed the flyer with anyone, and that the photographs on the flyer were so dark as to be "not recognizable" or "almost

not recognizable." All of the managers claimed that they had never met Mitre or Canseco, that they relied on mall security personnel, and that they had no reason to doubt the information given to them by mall security.

In addition, the shops also offered excerpts from the depositions of Mitre and Canseco as summary judgment evidence. Mitre and Canseco testified that neither had suffered injuries any more severe than humiliation and embarrassment as a result of the incident. Both also testified that they believe that they still have good reputations in their community, and that their friends would disbelieve the accusations of counterfeiting, although Mitre was concerned that his neighbors might believe the accusations and give him a bad reputation.

Mitre and Canseco submitted the controverting affidavit of Bob Jeffreys, an investigator who claimed that when he had visited the mall, he saw the flyer displayed to the public in Brooks, Spencer, Attivo, Cutlery, Joe Brand, Jeans West, Lerners, 5–7–9, Joan Bari, and Oak Tree shops. A copy of the flyer was attached as an exhibit to Jeffreys' affidavit. It contains darkened copies of the photographs of Mitre and Canseco [5], who are listed as "suspects," with an admonition to the shops to "check your $100 bills," and a further notation of the serial numbers on two allegedly counterfeit $100 bills.

■ Specifically by their first point of error, Mitre and Canseco complain that they raised an issue concerning whether the defamatory flyer was published.

Publication is either a negligent or an intentional act that communicates a defamatory matter to a person other than the person defamed. *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 921–22 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.); *First State Bank v. Ake,* 606 S.W.2d 696, 701 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Moreover, it

---

5. We believe that it would be inappropriate on summary judgment for either the trial court or this Court to speculate from this exhibit about the extent to which repetitive photocopying has darkened the images of Mitre and Canseco or about the condition of the flyers displayed in the various stores.

is not necessary that the plaintiff be named, so long as those who know and are acquainted with him understand that the defamatory publication referred to him. *See Newspapers, Inc. v. Matthews*, 161 Tex. 284, 339 S.W.2d 890, 894 (Tex.1960); *Diaz v. Rankin*, 777 S.W.2d 496, 499 (Tex. App.—Corpus Christi 1989, no writ).

In the present case, we are concerned with two general acts of publication: first, the distribution of the flyers by mall security to the individual managers, and the posting and discussion of the flyers between the employees of the individual shops; second, display of these flyers in a manner that they could be seen by the general public. The first act of publication is generally admitted by the shops, which nevertheless contend that these publications are protected by a conditional or qualified privilege.

With regard to the publication of the flyer to customers, however, the mall shops contend that the affidavits submitted by their managers constituted uncontroverted summary judgment evidence that the flyer was not visible to the public, that none of their employees discussed the flyer with the public, and that the images of Mitre and Canseco were not recognizable.

■ Tex.R.Civ.P. 166a(e) provides that affidavits submitted in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 761–62 (Tex.1988). Affidavits consisting only of subjective opinions and conclusions are not competent summary judgment evidence. *Brownlee v. Brownlee*, 665 S.W.2d 111 (Tex.1984); *Hidalgo v. Surety Savings and Loan Association*, 487 S.W.2d 702 (Tex.1972); *Inwood Forest Community Improvement Association v. R.J.S. Development Co.*, 630 S.W.2d 751, 754 (Tex.App.—Houston [1st Dist.] 1982, no writ). The contents of an affidavit must set forth facts that would be admissible in evidence, not mere legal conclusions.

*Sherard v. Smith*, 778 S.W.2d 546, 549 (Tex.App.—Corpus Christi 1989, writ denied); *Manges v. Astra Bar, Inc.*, 596 S.W.2d 605, 610 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

■ However, a summary judgment may be granted on the basis of the uncontroverted affidavit of an interested witness if the affidavit is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989); *Republic National Leasing Corp. v. Schindler*, 717 S.W.2d 606 (Tex.1986); Tex.R.Civ.P. 166a(c).

In the present case, the shops contend that their affidavits met the summary judgment requirements for the uncontroverted affidavit of an interested witness, but that Jeffreys' affidavit did no more than make an unsupported conclusion which could not be considered by the trial court.

However, with regard to the claim that the flyers were not visible to customers, the managers' affidavits were themselves conclusory and provided no facts to show how the flyers were posted such that customers could not have seen them. We do not know whether the managers meant that customers physically could not see the flyer from any of the public areas in the shop, or just that most customers passing through the shop would not be likely to notice the flyer. Moreover, the assertion in Jeffreys' affidavit that the flyers were "displayed to the public" is a direct enough assertion of fact based on his own observation that the flyers were visible to the public, rather than hidden in a file or on a shelf.

In addition, the managers' assertions that there was no discussion of the flyers by their employees are also devoid of the factual basis by which the managers claim this knowledge. Unless the managers were present to observe their employees at all relevant times during which the information in question was available, these assertions were not made on personal knowledge but upon the inadmissible hearsay representations of the employees themselves concerning whether they discussed

the flyer with customers. Thus, the affidavits were not competent summary judgment evidence to show that the employees did not discuss the flyers with customers.

Finally, the managers' various assertions that the images of Mitre and Canseco were so dark as to be "not recognizable" or "almost not recognizable" are themselves inconsistent. To the extent that some of the managers testified that the images were *almost* not recognizable, they contradicted the representations of other managers that the images were not recognizable at all. Moreover, this difference of opinion merely demonstrates the conclusory nature of these assertions, which were made by individuals who in the same affidavits admitted that they did not know Mitre and Canseco, and therefore would not have recognized them in the first place. They were not competent summary judgment evidence.

We hold that the affidavits submitted by the shops did not conclusively negate Mitre and Canseco's claims that the flyers were communicated to the public. Appellants' first point of error is sustained.

■ By their second point of error, Mitre and Canseco contend that the defense of conditional qualified privilege did not apply to the communication to the general public.

■ A conditional or qualified privilege applies to communications made in good faith on any subject matter in which the author has an interest, or with reference to which he has a duty to perform to another person having a corresponding interest or duty. *Associated Telephone Directory Publishers, Inc. v. Better Business Bureau of Austin, Inc.*, 710 S.W.2d 190, 192 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Zarate v. Cortinas*, 553 S.W.2d 652, 654–55 (Tex.Civ.App.—Corpus Christi 1977, no writ); *see also Tucker*, 806 S.W.2d at 927.

■ Specifically, a conditional or qualified privilege applies to the giving of information to persons interested in the trade and commercial standing of another at the time the information is given, but does not apply to the furnishing of such information to others not so interested. *Dun and Bradstreet, Inc. v. O'Neil*, 456 S.W.2d 896, 898–99 (Tex.1970) (privilege applied to the false report of a bankruptcy filing to all those subscribers to a credit reporting agency who had recently inquired about the person alleged to have filed for bankruptcy). Moreover, whether a conditional or qualified privilege exists is a question of law for the court. *Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex.App.—Houston [14th Dist.] 1981, no writ).

In the present case, the shops argue that they had a conditional privilege to communicate the information about Mitre and Canseco to their employees for the purpose of protecting their businesses from receiving counterfeit bills. We agree.

■ However, a communication loses its privileged character where it is made to those outside of the interest group in question. *See Perry Bros. Variety Stores, Inc. v. Layton*, 25 S.W.2d 310, 313 (Tex.Comm'n App.1930, opinion adopted). In *Layton*, for instance, the statement of a store manager charging a customer with shoplifting lost its privileged character because it was made in the presence of other customers. *Id.* at 313.

Similarly, in the present case, Mitre and Canseco have alleged that the defamatory flyer was communicated not only to shop employees, but was also visible to members of the public in those shops. Having determined in our discussion of the publication of the flyer that a fact issue existed on this question, we also conclude that the protection of the conditional privilege is dependent upon whether the flyer was published only to shop employees, or also to the general public. Appellants' second point of error is sustained.

■ By their fifth point of error Mitre and Canseco complain that, because the publication amounted to a defamation *per se*, damages to their reputations should have been presumed.

■ If a statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is defamatory *per se*. *Ramos*

*v. Henry C. Beck Co.*, 711 S.W.2d 331, 334 (Tex.App.—Dallas 1986, no writ) (publication of a third-party report of theft, as opposed to a direct accusation of theft, may be defamatory *per se* ). It is not necessary that the publication of a charge of violating a criminal statute be made in a technical manner the same as might be required of an indictment. It is sufficient on reading the article that an ordinary person would draw a reasonable conclusion that the complaining party was charged with a violation of some criminal law. *Hornby v. Hunter*, 385 S.W.2d 473, 475 (Tex.Civ.App.—Corpus Christi 1964, no writ); *Easley v. Express Publishing Co.*, 299 S.W.2d 782 (Tex.Civ. App.—San Antonio 1957, writ ref'd n.r.e.). In other words, it is sufficient if the charge is made by reasonable implication or insinuation, or if it consists of a statement of facts which naturally and presumably would be understood as a charge of crime by those who hear it, or if the language was calculated to induce those who heard it to understand that the person to whom it relates is guilty of a crime. *Elder v. Evatt*, 154 S.W.2d 684, 685 (Tex.Civ.App.—Eastland 1941, no writ) (quoting 27 Tex. Jur. *Libel and Slander* § 6 (1933)). In the present case, the listing of Mitre and Canseco as "suspects" on the flyer, when read together with its warning about counterfeit $100 bills, reasonably implied that they were charged with the criminal offense of counterfeiting.

■ Damages generally recoverable for defamation include compensation for injuries to reputation or character, mental anguish and other like wrongs incapable of money valuation. *Tucker*, 806 S.W.2d at 922. However, in a case of defamation *per se*, the law presumes actual damages and no independent proof of damages to reputation or of mental anguish is required. *Leyendecker & Associates, Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984); *Tucker*, 806 S.W.2d at 922; *Tatum v. Liner*, 749 S.W.2d 251, 258 (Tex.App.—San Antonio 1988, no writ).

In the present case, the shops contend that the excerpts from Mitre and Canseco's depositions showed conclusively that they suffered no damages because they admitted that their friends did not believe the accusations and that they generally retained good reputations. However, Mitre and Canseco's admissions do not conclusively show that their reputations, though still generally good, have not been damaged or diminished or that they suffered no mental anguish as a result of the publication of the defamatory flyer. *See, e.g., First State Bank v. Ake*, 606 S.W.2d 696, 704 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). We sustain appellants' fifth point of error. We conclude that the trial court erred in granting summary judgment on Mitre and Canseco's claims for defamation.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

By their sixth and seventh points of error, Mitre and Canseco complain that the trial court erred in granting the summary judgment on their claims for intentional infliction of emotional distress. The mall shops raised as grounds for summary judgment on the emotional distress claims that the uncontradicted summary judgment evidence established the absence of any intent to cause emotional distress, and that neither Mitre nor Canseco suffered severe emotional distress.

■ Texas recognizes the tort of intentional infliction of emotional distress "for conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Bushell v. Dean*, 781 S.W.2d 652, 658 (Tex.App.—Austin 1989), *rev'd on other grounds*, 803 S.W.2d 711 (Tex.1991) (quoting Prosser and Keeton, Torts § 12 at 60 (5th ed. 1984)). The four elements of this cause of action are: 1) intentional or reckless conduct by appellees; 2) that was extreme and outrageous; 3) that caused appellant emotional distress; and 4) that was severe. *American Medical International, Inc. v. Giurintano*, 821 S.W.2d 331, 340 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Tidelands Automobile Club v. Walters*, 699 S.W.2d 939, 942 (Tex.App.—

Beaumont 1985, writ ref'd n.r.e.); Restatement (Second) of Torts § 46 (1965).

Specifically by their sixth point of error, Mitre and Canseco complain that the shops did not negate the required showing of intent. Although the summary judgment evidence may show that the mall shops had no ill will against Mitre or Canseco, it is enough that they either intentionally or recklessly communicated the defamatory flyer to the general public, which could certainly be considered extreme and outrageous conduct calculated to cause severe mental distress. *See Havens v. Tomball Community Hospital*, 793 S.W.2d 690 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Tidelands*, 699 S.W.2d at 945. Appellants' sixth point of error is sustained.

Specifically by their seventh point of error, Mitre and Canseco complain that the mall shops did not show the absence of severe emotional distress. In order to recover for the intentional infliction of emotional distress, the plaintiff must prove such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair, or public humiliation. *Havens*, 793 S.W.2d at 692; *see also Underwriters Life Insurance Co. v. Cobb*, 746 S.W.2d 810, 819 (Tex.App.—Corpus Christi 1988, no writ). Moreover, the distress inflicted must be so severe that no reasonable man could be expected to endure it without undergoing unreasonable suffering. *Giurintano*, 821 S.W.2d at 341.

The mall shops assert that Mitre and Canseco's testimony shows conclusively that they have sustained nothing more than embarrassment, which the mall shops contend does not constitute severe emotional distress. However, we hold that the public humiliation and fear of harm to reputation in their community that Mitre and Canseco testified to in their deposition excerpts may constitute severe distress and were the type of mental or emotional injuries for which they may recover under a claim for intentional infliction of emotional distress. *See Havens*, 793 S.W.2d at 692; *Tidelands*, 699 S.W.2d at 945. By merely pointing to these deposition excerpts, the mall shops

are therefore unable to show the absence of severe emotional distress. Appellants' seventh point of error is sustained. We conclude that the trial court erred in granting summary judgment on Mitre and Canseco's claims for intentional infliction of emotional distress.

### INVASION OF PRIVACY

By their eighth and ninth points of error, Mitre and Canseco complain that the trial court erred in granting the summary judgment on their claims for invasion of privacy. The mall shops raised as grounds for summary judgment on the invasion of privacy claims that the uncontradicted summary judgment evidence established that they did not publish facts about Mitre and Canseco placing them in a false light in the public eye, because no defamatory words or comments accompanied the distribution of the photographs, and that they did not act with the requisite intent, since any such publication of this matter of public interest was not done with malice.

The Texas Supreme Court case of *Billings v. Atkinson*, 489 S.W.2d 858 (Tex. 1973), initially recognized the tort of invasion of privacy, based generally on an individual's right to be left alone, to live a life of seclusion, and to be free from unwarranted publicity. *Id.* at 859.

Specifically, invasion of privacy consists of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) public disclosure of private facts, and (4) publicity placing a person in a false light. *Industrial Foundation of the South v. Texas Industrial Accident Board*, 540 S.W.2d 668, 682 (Tex.1976); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex.App.—Corpus Christi 1991, no writ); *Covington v. Houston Post*, 743 S.W.2d 345, 346 (Tex.App.—Houston [14th Dist.] 1987, no writ); Restatement (Second) of Torts § 652A (1977). With regard to a false light invasion of privacy, Restatement (Second) of Torts § 652E (1977) defines such a tort as follows:

One who gives publicity to a matter concerning another that places the other be-

fore the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

*See Covington,* 743 S.W.2d at 346–47. However, a caveat to the text and comment d. thereunder, both suggest that the requirement of a knowing or reckless disregard of falsity may apply only to a false light invasion of the privacy of a public figure, whereas it generally remains an open question whether the same standard, or merely a negligence standard, applies to a false light invasion of the privacy of a private figure.

Texas courts have held that, in false light cases involving private figures, the same negligence standard applies as in cases of defamation; i.e., actual malice need not be shown, but only that the defendant knew or should have known that the statement was false. *Wood v. Hustler Magazine, Inc.,* 736 F.2d 1084, 1091–92 (5th Cir.1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 783, 83 L.Ed.2d 777 (1985) (applying Texas law); *Diamond Shamrock Refining and Marketing Co. v. Mendez,* 809 S.W.2d 514, 520 (Tex.App.—San Antonio 1991, writ granted); *see also Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex. 1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977) (adopting negligence standard for defamation cases); *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 796 (Tex. App.—Beaumont 1991, no writ); *Boyles v. Kerr,* 806 S.W.2d 255, 259 (Tex.App.—Tex-

arkana 1991, writ granted) (liability in an invasion of privacy suit may be based upon negligence).

■ Specifically by their eighth point of error, Mitre and Canseco complain that they raised an issue as to whether the defamatory document was published. For the same reasons we discussed in our analysis of the defamation points of error, the display and communication to the public of the flyer in question falsely implied that Mitre and Canseco were counterfeiters. We conclude that the mall shops' publication of the flyer was actionable as a false light invasion of privacy as well as a defamation. *See Covington,* 743 S.W.2d at 347 (photograph of plaintiff published in newspaper and falsely represented as another person of same name against whom civil and criminal charges were pending); *National Bonding Agency v. Demeson,* 648 S.W.2d 748 (Tex.App.—Dallas 1983, no writ) (defamatory accusation of a crime by a "wanted" poster). Appellants' eighth point of error is sustained.

■ By their ninth point of error, Mitre and Canseco complain that the mall shops failed to show the absence of malice.[6] As in a defamation case, malice in a false light invasion of privacy case requires a showing that the defendant acted with knowledge of, or in reckless disregard as to, the falsity of the publicized matter. *Covington,* 743 S.W.2d at 346–47; Restatement (Second) of Torts § 652E(b) (1977). In the present case, it is undisputed that the mall shops had no actual knowledge of the falsity of the information on the flyers. However, malice by reckless disregard requires only that the mall shops in fact entertained serious doubts as to the truth of the flyers. *See St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325,

---

**6.** We note that, because the pleadings and summary judgment evidence suggest that Mitre and Canseco were private as opposed to public figures, the present case did not require a showing of malice as a part of their false light causes of action. *See Wood,* 736 F.2d at 1091–92; *Mendez,* 809 S.W.2d at 520. Nevertheless, the mall shops raised the absence of malice as a ground for summary judgment on the false light causes of action, and Mitre and Canseco challenge that ground only by contending that the mall shops

did not conclusively negate malice. Therefore, we may not now *sua sponte* challenge the trial court's grant of summary judgment on the false light claims on the unraised contention that malice is not an element of the tort. *See San Jacinto River Authority v. Duke,* 783 S.W.2d 209 (Tex.1990). Rather, we may address only Mitre and Canseco's complaint on appeal that malice was not conclusively shown by the summary judgment evidence.

20 L.Ed.2d 262 (1968); *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989); *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989).

As summary judgment evidence to negate malice, the mall shops offered their managers' affidavits, which all generally stated that they had received the flyers from mall security and that:

> As part of my duties as store manager, I must rely upon the security personnel for the mall in matters of security, and I have at all times done so. I have posted documents given to me by security personnel in the past and have never had any reason to doubt their accuracy or truthfulness. I had no reason to doubt the information on the flyer in question.

Mitre and Canseco presented no summary judgment evidence to controvert these assertions. In recent defamation cases before the Texas Supreme Court, uncontroverted assertions by the defendant revealing the source of the allegedly defamatory materials and denying any doubts as to their truth were held sufficient proof under the interested witness provisions of Tex. R.Civ.P. 166a(c) to negate actual malice as a matter of law. *Casso,* 776 S.W.2d at 558; *Carr,* 776 S.W.2d at 571. Likewise, in the present case, we hold that the affidavits by the mall shop managers were sufficient to negate actual malice with regard to the false light invasion of privacy causes of action. Appellants' ninth point of error is overruled. Therefore, we conclude that the trial court did not err in granting summary judgment on Mitre and Canseco's claims for invasion of privacy.

## NEGLIGENCE

By their tenth point of error, Mitre and Canseco complain that the trial court erred in granting the summary judgment on their claims for negligence. The mall shops raised as grounds for summary judgment on the negligence claims that the uncontradicted summary judgment evidence established that they had no duty to Mitre and Canseco. Specifically, Mitre and Canseco contend that a duty did exist and a fact issue remains concerning whether the mall shops breached that duty.

As the mall shops correctly argue on appeal, *Foster v. Laredo Newspapers, Inc.,* 541 S.W.2d 809, 819 (Tex.1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977) established negligence as the standard of liability for a defamation action in Texas. In the present case, we concluded in our discussion of the defamation points of error that Mitre and Canseco clearly raised fact questions, uncontradicted by the mall shops, concerning a defamatory publication by the mall shops of the flyers in question. In accordance with *Foster* and the negligence standard, the assertion of a defamation cause of action encompasses a duty on the part of the mall shops to Mitre and Canseco and a resulting breach of that duty by the defamatory publication. Therefore, the mall shops did have a duty to Mitre and Canseco under the present circumstances, and summary judgment on the negligence claims on the ground that no such duty existed was clearly incorrect. Appellants' tenth point of error is sustained. We conclude that the trial court erred in granting summary judgment on Mitre and Canseco's claims for negligence.

## GROSS NEGLIGENCE

By their eleventh point of error, Mitre and Canseco complain that the trial court erred in granting the summary judgment on their claims for gross negligence. The mall shops raised as grounds for summary judgment on the gross negligence claims that the uncontradicted summary judgment evidence established that they had no requisite intent, nor entire want of care, and that their actions were not done out of conscious indifference to the rights, welfare or safety of Mitre and Canseco.

Gross negligence, as grounds for exemplary damages generally, is that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it. In other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrated that he did

not care. *Aluminum Co. of America v. Alm,* 785 S.W.2d 137, 140 (Tex.1990); *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 920–22 (Tex.1981). However, within the context of a defamation cause of action, actual malice is the standard for awarding exemplary damages. *See Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984). In other words, if the defamation is characterized in terms of a negligent breach of duty, then "gross negligence" sufficient to support exemplary damages would require a showing of actual malice.

■■■ In the present case, as we discussed in our analysis of the invasion of privacy points of error, the mall shops' summary judgment evidence conclusively negated the element of actual malice. Therefore, in terms of a negligence cause of action based upon defamation, negation of malice also negates any attempt to recover exemplary damages based on gross negligence. Appellants' eleventh point of error is overruled. We conclude that the trial court did not err in granting summary judgment on Mitre and Canseco's claims for gross negligence.

Finally, Mitre and Canseco raise no point of error or argument on appeal concerning the disposition of their DTPA claims against the mall shops. Therefore, we are not called to examine that portion of the summary judgment disposing of these claims.

The remaining points of error are not dispositive and we do not address them.[7] *See* Tex.R.App.P. 90(a).

We REVERSE the trial court's summary judgment on the defamation, intentional infliction of emotional distress, and negligence causes of action, and we REMAND these causes for trial. With respect to the remainder of the summary judgment on the invasion of privacy, gross negligence,

and DTPA causes of action, we AFFIRM the judgment of the trial court.

---

7. However, we note that the appellees attempt to complain by cross-point that we erred in failing to grant their motions to dismiss the present appeal for lack of jurisdiction. We decline to accept appellees' invitation to reconsider our prior Opinion on Motions to Dismiss, *Mitre v. Brooks Fashion Stores, Inc.,* 818 S.W.2d 154 (Tex.App.—Corpus Christi 1991, opinion on motion to dismiss), in which we concluded that we do have jurisdiction over the present appeal for the reasons stated in that opinion. We note that the recent case of *Mueller v. Saravia,* 826 S.W.2d 608 (Tex.1992) (per curiam) supports that conclusion. Appellees' cross-point is thus overruled.