United States Court of Appeals,

Fifth Circuit.

No. 94-20734.

TACON MECHANICAL CONTRACTORS, INC., et al., Plaintiffs,

Tacon Mechanical Contractors, Inc. and the Walsh & Albert Company, Plaintiffs-Appellants,

v.

AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.

The WALSH & ALBERT COMPANY, Plaintiff-Appellant,

v.

AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee.

Oct. 4, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH, BARKSDALE and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The central issue of this appeal is whether a subcontractor has a cause of action against a contractor's surety for alleged delays in payment under Texas state law. Because Texas does not recognize such a claim, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

This controversy has its genesis in a construction project at the Naval Reserve Readiness Center in Houston. Menendez, Donnell & Associates ("Menendez") contracted with the United States to make certain improvements to the facility. Menendez subcontracted with appellant Tacon Mechanical Contractors, Inc. ("Tacon") for labor and materials. In turn, Tacon subcontracted with appellant The

1

Walsh & Albert Company ("Walsh") for sheetmetal ductwork. In accordance with the Miller Act, Menendez obtained a payment bond from a surety, appellee Aetna Casualty and Surety Co. ("Aetna"). *See* 40 U.S.C. §§ 270a-270d (1993).

When Menendez failed to make prompt payment, Tacon and Walsh made a claim for payment with the surety Aetna. When Aetna was tardy in making payment on the bond, Tacon and Walsh each filed suit in district court as provided under the Miller Act. 40 U.S.C. § 270b(b). These suits were later consolidated into this action. In addition to Miller Act claims for payment on the bond, Tacon and Walsh also sued Aetna for various state law causes of action arising from Aetna's alleged bad faith in handling the dispute. Specifically, Tacon alleged breach of a common law duty of good faith and fair dealing, violation of article 21.21 of the Texas Insurance Code,[1] vexatious failure to pay the Miller Act claim, and tortious interference with business relations. Walsh also raised the good faith and fair dealing and Insurance Code violations.

Following a hearing on September 9, 1993, the district court ordered Aetna to pay the Miller Act claims; Aetna eventually complied.[2] Following the elimination of the Miller Act claims,

---

[1]The Texas Insurance Code prohibits unfair claim settlement practices including failure to adopt and implement reasonable standards for prompt investigation of claims and not attempting in good faith to effectuate prompt settlement. Tex.Ins.Code Ann. art. 21.21-2, §§ 2(b)(3), (4) (West Supp.1995).

[2]The record reflects that at the September 9, 1993 hearing, the exact amount of the Miller Act claims was undetermined. However, it was undisputed that Aetna owed at least $167,000. The district court, reducing the sum for margin of error, ordered Aetna to pay at least $140,000 by September 13, 1993. On

Aetna moved for summary judgment on the state law claims on two independent grounds: (1) federal preemption of state law claims by the Miller Act; and (2) the absence of Texas state law causes of action for a surety's "bad faith" handling of a claim. The district court granted partial summary judgment on all the state law claims on both grounds. 860 F.Supp. 385, 389 (S.D.Tex.1994). Following final judgment disposing of all remaining issues, Tacon & Walsh appeal asserting that the district court erred in dismissing their state law claims.

### STATE LAW BAD FAITH CLAIMS

Because the district court dismissed the state law bad faith claims by way of summary judgment, we review its decision de novo under well-established standards. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); *Sterling Property Management, Inc. v. Texas Commerce Bank, Nat'l Ass'n,* 32 F.3d 964, 966 (5th Cir.1994).

The district court rendered a take nothing judgment for Aetna on each of the state law claims because Texas law does not recognize a cause of action for a surety's failure to promptly pay a claim. Recent authority from the Texas Supreme Court makes clear the correctness of the district court's decision. In *Great American Insurance Co. v. North Austin Municipal Utility District No. 1,* 1995 WL 358834, at *1, --- S.W.2d ----, ---- (Tex. June 15, 1995), the Texas Supreme Court specifically held that "there is no

---

November 15, 1993, Aetna paid $186,915.92 on the Miller Act claims, leaving a disputed balance of $7,850.92 at the time of partial summary judgment.

common law duty of good faith and fair dealing between [a] surety and [a] bond obligee." Likewise, the court held that given the unique character of suretyship, a surety has no liability to an obligee under article 21.21 of the Texas Insurance Code. *Id.* at *9, --- S.W.2d at ----. These two explicit holdings dictate our conclusion that the district court was correct in concluding that appellants' common law bad faith and Insurance Code claims are not available under Texas law.[3]

Tacon maintains, however, that *Great American* does not dispose of its vexatious failure to pay or tortious interference claims.[4] It contends that these claims are separate and distinct from the common law and statutory bad faith claims. We disagree. There is no authority for the existence of a vexatious failure to pay cause of action in Texas. Any such allegation is clearly subsumed into the holding of *Great American* that no common law duty of good faith and fair dealing exists between a surety and obligee.

While Texas does recognize a tortious interference cause of action, see *Holloway v. Skinner,* 898 S.W.2d 793, 794-95 (Tex.1995), we agree with the district court that, in this case, Tacon's claim is not distinct from its bad faith claim. Tacon admitted in oral

---

[3]In reaching its conclusion on the absence of a common law duty of good faith and fair dealing, the Texas Supreme Court cited approvingly the district court's published opinion. *Great American,* 1995 WL 358834, *4, --- S.W.2d at ---- (citing *Tacon Mechanical Contractors, Inc. v. Aetna Casualty & Sur. Co.,* 860 F.Supp. 385, 388 (S.D.Tex.1994)). This confirms the validity of the district court's approach to this issue.

[4]Walsh's complaint does not specifically contain allegations of vexatious failure to pay or tortious interference.

4

argument that there is no Texas authority applying a tortious interference claim in a surety context. Tacon's tortious interference claim is based upon the same factual allegation that Aetna was slow to pay on the surety bond and due to this delay Tacon's relationship with other subcontractors deteriorated. This is no more than a restatement of the bad faith claim. Under Texas law, an attempt such as this to fracture one cause of action into three or four by massaging the labels and language is impermissible. *Ross v. Arkwright Mut. Ins. Co.,* 892 S.W.2d 119, 133 (Tex.App.—Houston [14th Dist.] 1994, no writ); *cf. Sledge v. Alsup,* 759 S.W.2d 1, 2 (Tex.App.—El Paso 1988, no writ). Likewise, our own federal summary judgment procedure requires us to pierce through the pleadings and their adroit craftsmanship to reach the substance of the claim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222-23 (5th Cir.1986); *see also United Nat'l Ins. Co. v. Tunnel, Inc.,* 988 F.2d 351, 354 (2d Cir.1993). We conclude, as did the district court, that Tacon's tortious interference claim, at its core, merely reiterates the bad faith claim. As a result, the district court did not err in granting summary judgment for Aetna on each of the state law claims.

## ATTORNEY'S FEES

In the wake of the disintegration of its state law claims, Tacon gamely contends that Aetna's alleged vexatious failure to pay can still provide the basis for attorneys' fees. Specifically,

5

Tacon argues that because there are "fact issues" surrounding Aetna's bad faith, summary judgment was inappropriate. The resolution of Tacon's claim requires a proper understanding of the award of attorneys' fees stemming from a Miller Act claim and the appropriate standard of review.

The Supreme Court specifically addressed the availability of attorneys' fees in the context of the Miller Act in *F.D. Rich Co. v. United States ex rel. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). Under the American Rule, attorneys fees are not generally recoverable in the absence of statute or contract. *F.D. Rich,* 417 U.S. at 129, 94 S.Ct. at 2165. Characterizing Miller Act suits as "plain and simple commercial litigation," the Court refused to obviate the American Rule and held that the Miller Act does not specifically provide for an award of attorneys' fees. *Id.* at 130-31, 94 S.Ct. at 2165-66; *see United States ex rel. Howell Crane Serv. v. U.S. Fidelity & Guar. Co.,* 861 F.2d 110, 112 (5th Cir.1988).

The Court noted, however, that as one of the long-recognized exceptions to the general rule, a district court may award attorneys' fees to a successful party "when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *F.D. Rich,* 417 U.S. at 129, 94 S.Ct. at 2165. Critical to an understanding of this exception is that an award of attorneys' fees under this exception stems from the district court's inherent power to sanction abusive and egregious behavior by a litigant by awarding attorneys' fees, not from any substantive provision of the

6

Miller Act. *United States ex rel. Treat Bros. Co. v. Fidelity & Deposit Co.,* 986 F.2d 1110, 1120 (7th Cir.1993); *United States ex rel. C.J.C., Inc. v. Western States Mechanical Contractors, Inc.,* 834 F.2d 1533, 1543 (10th Cir.1987); *see Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). While the district court may sanction a party in a Miller Act case under its inherent authority, the decision is solely within the discretion of the district court. *Fidelity,* 986 F.2d at 1120.

In this case, the district court, in the exercise of its discretion, chose not to sanction Aetna by awarding attorneys' fees to Tacon. The district court noted that while Aetna should have paid the claims more quickly, its conduct did not warrant an award of attorneys' fees. While the rationale for the district court's denial of attorneys' fees is contained in its opinion on summary judgment, it is clear to this Court that we review its decision not to exercise its inherent power to sanction under an abuse-of-discretion standard. *See Chambers,* 501 U.S. at 55, 111 S.Ct. at 2138 ("We review a court's imposition of sanctions under its inherent power for abuse of discretion."); *Elliott v. Tilton,* 1995 WL 513324, *4, --- F.3d ----, ---- (5th Cir. Sept. 15, 1995); *Fidelity,* 986 F.2d at 1119. Our review of the record reflects no abuse of discretion.

## CONCLUSION

The district court properly granted summary judgment because Texas law does not recognize a tort-based cause of action for a surety's failure to promptly pay a claim. Given our holding, we

7

need not address and express no opinion with respect to the district court's alternative conclusion on federal preemption. Additionally, we find no abuse of discretion in the court's decision not to sanction Aetna by awarding attorneys' fees. The district court's judgment is AFFIRMED.